# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**No.**  20-mj-03116-Louis

**UNITED STATES OF AMERICA**

**vs.**

**GENO ST. FLEROSE,**

    **Defendant.**

_____ /

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ____Yes  x  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  __Yes  x  No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____

Frederic C. Shadley
Assistant United States Attorney
Court ID No. A5502298
11200 N.W. 20th Street
Miami, Florida 33172
(305) 715-7649
(305) 715-7639 (fax)
Frederic.Shadley@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  20-mj-03116-Louis |
| Geno St. Flerose, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

### CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   August 10, 2018 - June 26, 2020   in the county of   Miami-Dade   in the

Southern   District of   Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1), (b) | Assault of a Federal Officer with a Deadly Weapon |
| 18 U.S.C. § 924(c) | Use of a Firearm in Furtherance of a Crime of Violence |
| 18 U.S.C. §§ 1029(a)(3), 1028A | Access Device Fraud and Aggravated Identity Theft |
| 18 U.S.C. § 922(g) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Ryan Driebelbis, FBI
*Printed name and title*

Attested to in accordance with the requirements of Federal
Rule of Criminal Procedure 4.1 by WhatsApp Video Call

Date:   July 10, 2020

_____
*Judge's signature*

City and state:          Miami, FL          Hon. Lauren F. Louis, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Ryan Dreibelbis, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have served in this capacity since February 2018.  Currently, I am assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division and have been at this location since May 2019. My duties involve investigating bank robberies, Hobbs Act robberies, extortion, kidnappings, and other violations of federal law.  Prior to moving to the Miami Division, I served as a Special Agent for the FBI's New York Division where I investigated narcotics trafficking violations.

2.      Based on information contained in this Affidavit, I respectfully submit there is probable cause to believe that Geno ST. FLEROSE has committed the following federal offenses: (1) assault on a federal officer using a deadly weapon, in violation of 18 U.S.C. § 111(a)(1), (b); (2) use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); (4) knowingly, and with intent to defraud, possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); (5) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1);  and (6) felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

3.      The facts set forth in this Affidavit are based on my personal knowledge and observations, the knowledge and observations of other law enforcement personnel, information and documents received in my official capacity from other sources of information, as well as information gained through my training and experience. The information contained in this Affidavit is true and correct to the best of my knowledge and belief. This Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, and thus does not include each and every fact known to law enforcement about this investigation.

**BACKGROUND**

4.      The USSS and the Federal Bureau of Investigation ("FBI") have been conducting a joint investigation into the 77th Street Gang, which is sometimes called "Uptown," "Every Body Eats," or "EBE."  The 77th Street Gang operates in the Southern District of Florida, and is involved in fraud-related crimes, identity theft, carjackings, car theft, shootings, murders, and other violent crimes.  The gang funds its activities largely through fraud, and that fraud affects interstate commerce.  The gang uses various access device fraud and wire fraud schemes to steal funds from victims. The group obtains personally identifiable information (i.e. names, dates of birth, credit card numbers, bank account numbers, and social security numbers) ("PII") in various was, including from the dark web and from robberies and burglaries.  The PII is used a number of different ways, including but not limited to, credit card fraud and bank account takeover schemes. In bank account takeover schemes, members of the group steal from victim bank accounts and wire the funds into other people's bank accounts before ultimately using the funds to unjustly enrich themselves. ST. FLEROSE is a member of the 77th Street Gang/EBE gang.

**PROBABLE CAUSE**

**August 10, 2018 – Unauthorized Access Devices and Aggravated Identity Theft**

5.      On or about August 10, 2018, the City of Miami Police Department ("MPD") assisted the Department of Correctional Probation with a probation check of ST. FLEROSE's residence located at 8057 NE 1st Ave., Apt. 2, Miami, Florida 33138 (the "Residence").  As part of this probation, ST. FLEROSE had signed a Florida Department of Corrections "Instructions to the Offender" document in which he acknowledged that: "Probation officers will conduct home verifications routinely and need to have access to your residence.  Probation officers have the right to search your residence."

6.     During the probation check of Residence, law enforcement saw a clear plastic sandwich bag containing suspected marijuana in ST. FLEROSE's bedroom. Thereafter, ST. FLEROSE verbally agreed and willfully signed a MDPD notice of consent to search form for the Residence.

7.     After receiving consent from ST. FLEROSE, law enforcement entered the Residence and completed a search of ST. FLEROSE's room. During the search, law enforcement discovered three composition books containing personal identification information ("PII") – names, dates of births, bank account numbers, and social security numbers – of individuals not associated with the Residence or ST. FLEROSE. Law enforcement confirmed that the PII belonged legitimate victims throughout South Florida. The cover of one of the composition books has ST. FLEROSE's nickname printed on the front cover.

8.     ST. FLEROSE was transported to Miami-Dade Police Northside Station for further investigation. While in the station, ST. FLEROSE was read *Miranda* per the MDPD Agency issued *Miranda* Form. The defendant thereafter waived his rights and spoke to law enforcement.

9.     Post-*Miranda*, ST. FLEROSE said that he purchased the PII from a "dark web" website. He indicated that he paid for the PII with his credit card and was charged $4.00 per set of information. ST. FLEROSE said he had no direct relationship with the victims, nor had he ever met them. In addition, ST. FLEROSE admitted to owning the composition books, along with the contents contained within.

10.    After thoroughly reviewing one of ST. FLEROSE's composition books, law enforcement discovered a page with a list titled "To Do List". Number 7 on the list read "Fraud" as pictured below:



11.     When law enforcement asked ST. FLEROSE about the PII, ST. FLEROSE stated that everything was old and that the list was from "a couple years ago". Law enforcement asked ST. FLEROSE what his intentions were after purchasing the personal information on the dark web, and ST. FLEROSE did not respond.  Contained in the notebooks were 15 or more unauthorized access devices, in violation of Title 18, United States Code, Section 1029(a)(3).

12.     During the examination of ST. FLEROSE's notebooks, law enforcement located a debit card number and name belonging to victim M.B. On or about July 1, 2020, victim M.B. stated that she does not know ST. FLEROSE and she did not authorize ST. FLEROSE to possess her credit or debit card number or personally identifiable information.

13.     During the examination of ST. FLEROSE's notebooks, law enforcement located a debit card number and name belonging to victim O.A.O. On or about July 1, 2020, victim O.A.O. stated that he does not know ST. FLEROSE and he did not authorize ST. FLEROSE to possess his debit or credit card number, address, or personally identifiable information.

14. The facts set out in the above section support the following charges: (1) knowingly, and with intent to defraud, possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); and (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

**April 16, 2019 – Unauthorized Access Devices and Aggravated Identity Theft**

15. On or about April 16, 2019, at approximately 8:10 p.m., law enforcement saw a 2015 Lexus RC350 bearing temporary tag #CKD8761 (the "Lexus"). Law enforcement observed the Lexus turn north bound on North Miami Avenue and NW 77 Street in Miami, Florida at a high rate of speed, screeching the car's tires and cutting off oncoming traffic. Law enforcement conducted a traffic stop of the Lexus at 2 NE 79th Street in Miami, Florida. Upon approaching the vehicle, law enforcement observed ST. FLEROSE in the driver seat of the Lexus.

16. A record check of ST. FLEROSE revealed that his Florida Driver License had been suspended since November 13, 2018. Law enforcement confirmed that notice of the suspension was provided to ST. FLEROSE's registered address on or about February 22, 2019. During the traffic stop, law enforcement confirmed that ST. FLEROSE still resided at that address. ST. FLEROSE was subsequently arrested for driving with a suspended license, and in relation to prior cases related to dealing in stolen property and grand theft. A black Motorola Cellphone and a gray and black iPhone, were both seized from ST. FLEROSE incident to his arrest. A Federal Search Warrant was obtained for ST. FLEROSE's cellphones (19-mj-2776-Torres).

17. On or about May 14, 2019, law enforcement obtained a Federal Search and Seizure Warrant for the cell phones seized from ST. FLEROSE incident to his arrest on or about April 16, 2019. The search of ST. FLEROSE's devices revealed a large amount of PII, including dates of births, social security numbers, and credit card numbers of other people. The forensic examination of ST. FLEROSE's cellphones, law enforcement identified at least 15 or more unauthorized access devices.

18.     During the examination of ST. FLEROSE's cell phones, law enforcement located a photograph of a Florida Driver License belonging to victim A.K.H.  On or about July 1, 2020, victim A.K.H. was interviewed and stated that she does not know ST. FLEROSE and she did not authorize ST. FLEROSE to possess her Florida Driver License, Florida Driver License Number, date of birth, address or personally identifiable information. Victim A.K.H. also stated that she does not know ST. FLEROSE.

19.     During the examination of ST. FLEROSE's cell phone, law enforcement located a photograph of a Florida Driver License belonging to victim J.J.H. On or about July 1, 2020, victim J.J.H. was interviewed and stated that he does not know ST. FLEROSE, and did not authorize ST. FLEROSE to possess his Florida Driver License, Florida Driver License Number, date of birth, address, or personally identifiable information. Victim J.J.H. also stated that he does not know ST. FLEROSE.

20.     During the examination of ST. FLEROSE's cell phone, law enforcement located a note containing the personally identifiable information, including the Florida Driver License Number, date of birth, address, social security number, date of birth, and email, belonging to victim R.M.B. On or about July 1, 2020, victim R.M.B. was interviewed and stated that she does not know ST. FLEROSE and she did not authorize ST. FLEROSE to possess her Florida Driver License Number, date of birth, address, social security number, date of birth, email, or personally identifiable information. Victim R.M.B. also stated that she does not know ST. FLEROSE.

21.     The facts set out in the above section support the following charges:  (1) knowingly, and with intent to defraud, possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); and (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

**June 17, 2020 – Assault on a Federal Officer and Use of a Firearm in Furtherance**

22.     On June 3, 2020, a federal criminal complaint and arrest warrant were issued for an individual with the initials B.C., charging him with access device fraud and aggravated identity theft (20-mj-2864-O'Sullivan).  Starting on June 4, 2020, agents visited multiple addresses and locations in an attempt to locate and arrest B.C.  On or about June 8, 2020, law enforcement attempted to visit ST. FLEROSE, an associate of B.C. that they thought would have information on the location of B.C.  Law enforcement was unable to locate ST. FLEROSE, or B.C., on June 8, 2020.

23.     On the evening of June 17, 2020, a FBI Special Agent was performing surveillance in an effort to locate B.C.  Specifically, he was driving to locations B.C. was known to visit, and locations of known associates.  One of those locations was ST. FLEROSE's home, 8057 NE 1st Ave, Miami, FL (the "8057 Residence").  Around 10:00 PM, as the agent looked for B.C., he drove by the 8057 Residence in his government issued white Ford Fusion.  As the agent drove by, the agent observed ST. FLEROSE and a black male in the driveway of the residence, as well as a darker gray colored sedan. Law enforcement later determined that the black male with ST. FLEROSE was R.C.

24.     Approximately 20 minutes later, the agent stopped at the stop sign driving south on NE 1st Avenue at NE 82nd Street – towards the 8057 Residence.  The agent started to make a right turn onto NE 82nd Street (away from the 8057 Residence) so that he would not pass the 8057 Residence again, and risk having his surveillance discovered.  Just as he started to make the turn, the agent observed a black male in a sweatshirt (later identified as ST. FLEROSE, but originally thought to be R.C.), running northbound towards the agent from the direction of the 8057 Residence.  Just as the agent began to turn onto NE 82nd Street, he observed the black male raise his right arm and fire at least four rounds from an unknown firearm at the agent, striking the agent's

vehicle multiple times. The agent immediately continued westbound on NE 82nd Street.  The agent himself was not hit by the rounds.  As the agent drove, he saw the black male turn and run southbound, back in the direction of the 8057 Residence.

25.    ST. FLEROSE was contacted by law enforcement that evening and interviewed. During that interview, he said that his friend "R.C." who had done the shooting.  ST. FLEROSE stated R.C. noticed a white Ford Fusion circle the block multiple times, and believed it was a rival Op (opposing gang member), so he shot at the Fusion.  ST. FLEROSE relayed that an associate of theirs had been shot and killed the day before, and he and R.C. were on edge as a result.

26.    A review of emergency obtained historical cell site data for the R.C. Phone showed that the R.C. Phone was in the vicinity of the shooting address (the 8057 Residence) at 10:05 PM and 10:12 PM on June 17, 2020.  While law enforcement was on the scene near the 8057 Residence, they recovered and collected evidence, including approximately five spent 9 millimeter casings.  R.C. was later interviewed, and gave inconsistent and misleading statements about the night in question.  R.C. was later charged via complaint with the assault of the FBI agent that night (20-mj-2954-CMM), though that charge has since been dismissed because – as explained below – ST. FLEROSE has confessed to the shooting.

27.    On July 8, 2020, ST. FLEROSE was interviewed by law enforcement.  He came to the FBI to give a voluntary statement, and was later read his *Miranda* rights – which he waived. He then gave an audio and video recorded statement.  ST. FLEROSE stated that it was he, and not R.C., who had fired the shots at the car containing the FBI agent.  He explained that he was out by the front of the Residence with R.C., and R.C. pointed out the agent's car coming back past the Residence.  R.C. thought the car contained members of a rival gang.  ST. FLEROSE explained that he and R.C. could have gone back into the apartment building area, to avoid the car, but instead he ran towards the car in order to attack it, and fired multiple shots at the car.  He said that the gun

he used was a Glock 26 (the "GS GLOCK").[1]   ST. FLEROSE acknowledged that, when he shot at the car, it was stopped at a stop sign, he did not see into the car, he only noticed that one window was cracked about an inch or two, the windows were not being rolled down, and he did not see any firearms sticking out of the car.  After the shooting, ST. FLEROSE returned to his residence to retrieve a Draco firearm (which is an AK-47 like semi-automatic pistol).  ST. FLEROSE and R.C. then got into R.C.'s car and went driving around looking for the car he had shot at, so that they could shoot whoever was inside of it.  During a break in his interview, while agents were out of the room, ST. FLEROSE called someone and told them to go remove a firearm from his home.  Law enforcement went to the home and received consent to search the home.  Inside, law enforcement located an individual who had moved the GS GLOCK, and later found the GS GLOCK itself.  ST. FLEROSE later admitted that the GS GLOCK was the firearm used to shoot at the FBI agent.

28.    Based on a records check of ST. FLEROSE's criminal history, ST. FLEROSE is a convicted felon.  On June 11, 2018, ST. FLEROSE was convicted for being a felon or delinquent in possession of a firearm or ammunition, a second degree felony (Fla. Stat. 790.23(1) and 775.087(4)).  On December 13, 2019, ST. FLEROSE was convicted for dealing in stolen property (Fla. Stat. 812.019(1), and pawnbroker related crime (Fla. Stat. 539.001(8)(B)8A), both felonies.  All of the aforementioned felonies are punishable by a period of incarceration over a year.  As a convicted felon, ST. FLEROSE is not authorized to ship, transport, or possess any firearm or ammunition.

29.    The shooting at the federal agent forms the basis of the following charges: (1) assault on a federal officer using a deadly weapon, in violation of 18 U.S.C. § 111(a)(1), (b); (2)

---

[1] Based on my training and experience, I know that Glocks are manufactured in Austria and Georgia.

use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

### June 18, 2020 – Unauthorized Access Devices and Aggravated Identity Theft

30.     On or about June 18, 2020, ST. FLEROSE was identified by law enforcement as a witness to an incident where an individual had fired multiple shots from a firearm at an FBI agent. ST. FLEROSE agreed to speak with law enforcement, and also provided consent to search his cellphone, verbally and in writing.  During the examination of ST. FLEROSE's cellphone, law enforcement located a significant amount of evidence relating to fraud, including at least 15 or more unauthorized access devices.

31.     During the examination of ST. FLEROSE's cell phone, law enforcement located a photograph including the date of birth, social security number, and address belonging to victim A.D.J. On or about June 30, 2020, victim A.D.J. was interviewed and stated that he does not know ST. FLEROSE, and did not authorize ST. FLEROSE to possess his date of birth, social security number, or personally identifiable information.

32.     During the examination of ST. FLEROSE's cell phone, law enforcement located a photograph of the date of birth and social security number belonging to victim L.A.B. On or about June 30, 2020, victim L.A.B. was interviewed and stated that she does not know ST. FLEROSE, and she did not authorize ST. FLEROSE to possess her social security number, date of birth, or personally identifiable information.

33.     During the examination of ST. FLEROSE's cell phone, law enforcement located a photograph of the date of birth, name, address, and phone number belonging to victim J.E.L. On or about June 30, 2020, victim J.E.L. was interviewed and stated that she does not know ST. FLEROSE and she did not authorize ST. FLEROSE to possess her name, date of birth, address, phone number or personally identifiable information.

34.     During the examination of ST. FLEROSE's cell phone, law enforcement also located: (1) evidence of fraud against the government including COVID related unemployment claims from the state of Massachusetts; (2) evidence that ST. FLEROSE and fellow gang members had committed robberies and burglaries in Hollywood, Florida; and (3) pictures of ST. FLEROSE with what appear to be firearms.  ST. FLEROSE is a convicted felon and is prohibited from possessing firearms or ammunition.

35.     As to the COVID fraud, law enforcement located multiple messages that were sent by ST. FLEROSE to other individuals regarding Government grant pay related to the Coronavirus. In addition, on or about May 18, 2020, ST. FLEROSE received a message from a fellow gang-member containing a video of a screen recording from a cellphone with a step-by-step instructional video of how to conduct Pandemic Unemployment Assistance claims in the state of Massachusetts utilizing the Massachusetts Government website, www.mass.gov. In the video, the following information is input into the Massachusetts Government application for Pandemic Unemployment Assistance including but not limited to: a name, social security number, date of birth, address, and Massachusetts Driver License number. The personally identifiable information does not match that of ST. FLEROSE.

36.     On or about June 15, 2020, ST. FLEROSE received a message with a photograph from a co-conspirator showing a bank account receiving a $9,360.00 deposit to the account from the State of Arizona Benefitpay.

37.     Based on database checks, law enforcement does not have any information that suggests that ST. FLEROSE has lived in any states within the United States other than Florida.

38.     Based on my training and experience, in addition to exchanging personally identifiable information to other individuals, ST. FLEROSE was involved in, or communicated

with other individuals regarding, fraudulently obtaining unemployment and other benefits related to the coronavirus pandemic.

39.     The facts set out in the above section support the following charges:  (1) knowingly, and with intent to defraud, possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); and (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

### June 18, 2020 – Felon in Possession of Ammunition

40.     On or about the evening of June 17, 2020, or the morning of June 18, 2020, as described above, law enforcement came into contact with ST. FLEROSE as a witness to an incident where an individual fired several shots at an FBI agent.  That shooting happened near ST. FLEROSE's residence, and law enforcement subsequently obtained oral and written consent to search ST. FLEROSE's residence (8057 NE 1st Ave, Apt. 2, Miami, FL).  ST. FLEROSE identified his bedroom within the residence located at 8057 NE 1st Ave, Unit 2, Miami, FL.

41.     During the consent search of the Residence, law enforcement located: ST. FLEROSE's genuine Florida Driver License, a Silver Samsung Cell Phone with a cracked screen, a Large Black Apple iPhone with a magnetic attachment, a Pink Apple iPhone, a Gold Samsung Galaxy S7, a Black Playstation 4 with a power cable, Court documents, a Black iPad, a Black Dell Laptop, a Blue PayPal Card, and a Black Camera Bag—filled boxes of ammunition and two (2) Glock Magazines.  The black camera bag was located in the kitchen.  Law enforcement conducted a fingerprint analysis of the assorted ammunition and two (2) Glock Magazines.  That analysis showed that ST. FLEROSE's finger print was on a box of Sellier and Bellot 7.62 ammunition, containing 14 rounds.  This is consistent with a Draco or AK-47 style assault rifle.  Sellier and Bellot ammunition is manufactured in Serbia.

**June 26, 2020 – Unauthorized Access Devices and Aggravated Identity Theft**

42.     On or about June 26, 2020, law enforcement obtained a Federal Search Warrant for ST. FLEROSE's Facebook Account (20-mj-3040). During the examination of ST. FLEROSE's Facebook Account, law enforcement located 15 or more unauthorized access devices. This includes a photograph of a partial Florida Driver License bearing a Florida Driver License number belonging to victim J.S. Law enforcement also located a photograph of a Visa credit card belonging to victim J.S. On or about July 7, 2020, victim J.S. was interviewed and stated that he does not know ST. FLEROSE and he did not authorize ST. FLEROSE to possess his name, date of birth, address, phone number or personally identifiable information. Victim J.S. stated that his house was burglarized on February 14, 2020. Victim J.S. as well as his families' social security cards, credit cards, passports, checkbooks, electronics, and other personally identifiable information were stolen from the home.

43.     The facts set out in the above section support the following charges:  (1) knowingly, and with intent to defraud, possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); and (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

**July 8, 2020: ST. FLEROSE Confesses to Murder**

44.     As noted above, ST. FLEROSE was interviewed by law enforcement on July 8, 2020.  During that interview, ST. FLEROSE admitted to shooting and killing an individual who I believe, based on my training and experience, and the totality of this investigation, was a rival gang-member.  I will refer to that individual as "Rival 1."  ST. FLEROSE explained that, in the spring of 2020, he returned to his Residence and saw two people hiding nearby, who he thought were waiting to attack him.  One of those two individuals was "Rival 1."  ST. FLEROSE began firing rounds at those individuals, but they escaped at that time.  Some time later, ST. FLEROSE was in the car, and he again saw Rival 1.  Rival 1 was in another car.  ST. FLEROSE chased Rival

1, firing the GS GLOCK at Rival 1.  Rival 1 was struck by a bullet, or bullets, from ST. FLEROSE's firearm, and died.  The ammunition casings located at the scene of that murder were compared to the casings from the June 17, 2020 shooting at the FBI agent.  The ballistics analysis confirmed that the bullets had been fired by the same firearm, the GS GLOCK.

## CONCLUSION

45.     Based on the foregoing, I respectfully submit there is probable cause to believe that Geno ST. FLEROSE has committed the following federal offenses: (1) assault on a federal officer using a deadly weapon, in violation of 18 U.S.C. § 111(a)(1), (b); (2) use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c); (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); (4) knowingly, and with intent to defraud, possessing 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); (5) aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1);  and (6) felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Special Agent Ryan Driebelbis
Federal Bureau of Investigation

Attested to in accordance with the requirements of
Federal Rule of Criminal Procedure 4.1 by WhatsApp Video Call

This __10__ day of July, 2020.

_____
Hon. Lauren F. Louis
U.S. Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NUMBER:** ___20-mj-03116-Louis___

## <u>BOND RECOMMENDATION</u>

DEFENDANT: Geno St. Flerose

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:   Frederic C. Shadley

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s): S/A Ryan Driebelbis
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
USSS